**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| SAFEPORT INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:21-cv-00131-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| KAREN MACKO and WILLIAM STEPHEN | ) | |
| MACKO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The following matter is before the court on defendants Karen Macko ("Mrs. Macko") and William Stephen Mackos ("Mr. Macko") (together, the "Mackos") motion to dismiss, ECF No. 7. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

This declaratory judgment action arises out of the Mackos' homeowner's insurance policy with SafePort Insurance Company ("SafePort"). On January 15, 2019, the Mackos purchased the home at 30 Tansyleaf, Hilton Head Island, South Carolina (the "Home"). The Home is titled in the name of both Mr. and Mrs. Macko, as joint tenants with right of survivorship. In December 2018, Mrs. Macko applied for insurance for the Home with SafePort through a third-party insurance agency, American Auto Club Insurance Agency ("American Auto"). ECF No. 1-2 at 3–6. Mrs. Macko believes that her American Auto agent completed the application on her behalf. Whether by Mrs. Macko herself or her agent, in response to questions in the application, Mrs. Macko was identified as an unmarried individual who owned the Home outright. Further, Mrs. Macko's application indicated that no member of her household had been convicted of a

1

felony or other serious crime.  Id.  In January 2019, SafePort, purportedly relying on the statements in Mrs. Macko's application, issued a homeowner's insurance policy, SafePort Policy No. SCA237389300 (the "First Policy") to Mrs. Macko as the named insured.

In January 2020, Mrs. Macko renewed the First Policy, at which time SafePort issued the Second Policy, SafePort Policy No. SCA237389301 (the "Second Policy"), to Mrs. Macko (together with the First Policy, the "Policies").  On August 24, 2020, American Auto added Mr. Macko as a named insured on the Second Policy.  On September 10, 2020, during the term of the Second Policy, the Mackos suffered an accidental fire loss to the Home, making it uninhabitable ("the Fire Loss").  The Mackos reported the claim to SafePort the next day, on September 11, 2020.

Shortly thereafter, the Mackos engaged Servicemaster of Beaufort, Inc., a South Carolina corporation ("Servicemaster"), to remediate the damage to the Home. According to the Mackos, they engaged Servicemaster pursuant to SafePort's direction and recommendation.  Under the Second Policy, SafePort made payments to the Mackos for loss of use of the Home and authorized Servicemaster to remove all drywall from the Home and to dispose of the Mackos' personal contents, which were deemed a total loss. During its investigation, SafePort discovered two alleged misrepresentations in Mrs. Macko's application for the First Policy.  First, Mrs. Macko was married, contrary to the statements in her application identifying her as unmarried and owning the Home in full. Second, Mr. Macko had been convicted of felony insurance fraud, contrary to statements in the application that no member of the household had been convicted of a felony or other serious crime.  As a result, on November 11, 2020, SafePort mailed Mrs. Macko a letter purportedly rescinding the First Policy ab initio based on Mrs. Macko's "provision

2

of inaccurate information and/or omission of accurate information in the [] application."
ECF No. 7-1 at 3 (the "Purported Rescission").  SafePort thereafter made no further
payments under the Second Policy.

On January 13, 2021, SafePort filed the instant action seeking (1) a rescission of
the Policies for equitable fraud and (2) declaratory judgment that it has no obligation to
the Mackos or any other person under the Policies.  ECF No. 1, Compl.  The next day, on
January 14, 2021, Servicemaster filed a mechanic's lien against the Mackos and the
Home to secure alleged amounts owed for work done at the Home relating to the Fire
Loss.  ECF No. 7-2.  On January 20, 2021, Servicemaster filed a separate action in the
Beaufort County Court of Common Pleas against the Mackos, SafePort, and IAT
Insurance Group, SafePort's parent company or affiliate, seeking foreclosure on the
mechanic's lien (the "State Court Action").  See ECF No. 7-3; Servicemaster of Beaufort
County, Inc. v. IAT Insurance Grp., No. 2021-CP-07-00081 (S.C. Com. Pl. Jan. 20,
2021) (the "State Court Action").

On February 22, 2021, prior to filing an answer in this federal action, the Mackos
filed an answer, crossclaims, and a third-party complaint in the State Court Action.  See
ECF No. 7-4.  In their crossclaims, the Mackos assert bad faith and breach of contract
causes of action against SafePort and seek declaratory judgment.  Id.  Specifically, the
Mackos ask the state court to declare that the Second Policy was in effect at the time of
the Fire Loss, that SafePort's rescission was improper, that SafePort has failed to pay
benefits due under the Second Policy, and that SafePort has engaged in improper claims
practices.  Id.

On March 15, 2021, the Mackos filed a motion to dismiss this federal action pursuant to the abstention doctrine.  ECF No. 7.  On March 29, 2021, SafePort responded.  ECF No. 11.  The court held a hearing on the motion on April 19, 2021.  ECF No. 13.  Following that hearing, the court emailed the parties to request supplemental briefing.  The Mackos filed their supplemental briefing on May 4, 2021, ECF No. 16, and SafePort responded to the Mackos filing on May 14, 2021, ECF No. 17.  As such, this motion has been fully briefed and is now ripe for review.

## II.   DISCUSSION

The Mackos ask this court to abstain from exercising jurisdiction over the instant action because issues of fact and law overlap with the State Court Action.  The court first determines which abstention standard is applicable to this action and then addresses the merits of the Mackos' request under that standard.  Upon consideration, the court finds abstention inappropriate under the circumstances.

### A.  Abstention Standard

At the outset, the court addresses the parties' dispute regarding the proper standard that the court should apply in considering whether to exercise jurisdiction over this case.  Because SafePort seeks a declaration that the Policies are void <u>ab initio</u> and that it owes the Mackos no obligations under the Policies, the Mackos perceive the case as falling exclusively under the Declaratory Judgment Act, 28 U.S.C. § 2201, <u>et. seq.</u>  The Declaratory Judgment Act states that "any court of the United States . . . <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  According to the Supreme Court, the Act, as interpreted in the case <u>Brillhart v. Excess Insurance Company of America</u>, 316 U.S. 491

4

(1942), "makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). Accordingly,

> [t]he question for a district court presented with a suit under the Declaratory Judgment Act . . . is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."

Id. (quoting Brillhart, 316 U.S. at 495). The Mackos argue that because this case is brought under the Declaratory Judgment Act, the court should decline to exercise jurisdiction pursuant to the factors set forth in Brillhart and Wilton.

SafePort, on the other hand, points out that it has brought a non-declaratory judgment claim of rescission in addition to its declaratory judgment claims. As such, SafePort argues that this case more aptly falls under the abstention doctrine outlined in Colorado River Conservation District v. United States, 424 U.S. 800 (1976). The broad discretion of the Brillhart/Wilton standard is absent from the Colorado River standard. The Colorado River standard for abstention recognizes that Article III's bestowal of federal jurisdiction over "cases" and "controversies" has instilled in district courts a "virtually unflagging obligation" to exercise that jurisdiction over matters properly brought before them. Colorado River, 424 U.S. 800 at 817. Nevertheless, Colorado River carves out "extraordinary and narrow" exceptions to that general duty to adjudicate in the form of several doctrines of abstention. Id. Under Colorado River, a district court may abstain from exercising jurisdiction over an action otherwise properly before it "due to the presence of a concurrent state proceeding" for "reasons of wise judicial

administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 182 (1952)).  While wise judicial policy and extraordinary circumstances may justify dismissal, courts must remain cognizant that "[a]bstention from the exercise of federal jurisdiction is the exception [under Colorado River], not the rule." Id. at 814.  As the Supreme Court noted, circumstances warranting abstention under the Colorado River standard, "though exceptional, do nevertheless exist." Id. at 818.

To support its argument that the Colorado River standard applies, SafePort cites the Fourth Circuit's decision in vonRosenberg v. Lawrence, 781 F.3d 731, 732–733 (4th Cir. 2015).  In vonRosenberg, the Fourth Circuit held that "Colorado River, not Brillhart/Wilton, must guide a court's decision to abstain from adjudicating mixed complaints alleging claims for both declaratory and nondeclaratory relief." Id. at 735 (emphasis added).  The Fourth Circuit further clarified that "[t]he Colorado River standard applies to all mixed claims—even when the claims for coercive relief are merely 'ancillary' to [a party's] request for declaratory relief." Id. (internal citation omitted). Indeed, "the only potential exception to this general rule arises when a party's request for injunctive relief is either frivolous or is made solely to avoid application of the Brillhart[/Wilton] standard." Id. (internal citation omitted).

The Mackos did not file a reply brief and therefore did not initially address SafePort's contention that the Colorado River doctrine applies or discuss any of the relevant factors thereunder.  Therefore, after hearing oral arguments on the motion, the court requested that the Mackos provide supplemental briefing on this issue, and the court

6

permitted SafePort to respond to such briefing.  In its supplemental briefing, the Mackos argue that the court is not compelled by the vonRosenberg decision to apply the Colorado River doctrine in this action for two main reasons.  First, the Mackos maintain that the instant action does not involve a true "mixed complaint" that triggers the rule set forth in vonRosenberg.  Second, the Mackos argue that even if the vonRosenberg rule were applicable, the instant action falls under the exception articulated in vonRosenberg because SafePort's perfunctorily-added request for rescission is mere surplusage.  The court is unconvinced in both respects.

The Mackos argue that the rule in vonRosenberg is inapplicable because SafePort's complaint is not a true mix of declaratory and non-declaratory claims.  Specifically, the Mackos argue that rescission is neither a claim for damages nor a claim for injunctive relief and therefore does not qualify as a non-declaratory claim under vonRosenberg.  This argument is unavailing and contrary to caselaw.  See Beaufort Dedicated No. 5 Ltd. ex rel. Syndicate 1318 at Lloyd's v. Bradley, 2012 WL 3260325, at *6–7 (M.D.N.C. Aug. 8, 2012) ("Plaintiffs' rescission claim [] facially is not a declaratory judgment claim . . . ."); QBE Ins. Corp. v. Ocean Keyes Dev., LLC, 2017 WL 6323400, at *3 (D.S.C. Dec. 11, 2017) (characterizing the plaintiff's rescission cause of action as "nondeclaratory").  To be sure, the Fourth Circuit in vonRosenberg stated that the Colorado River doctrine applies to all claims in an action "when a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address."  vonRosenberg, 781 F.3d at 734 (emphasis in original) (citing Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 466 (4th Cir. 2005)).  However, on its face, that language does not limit application of the rule to only

those cases involving non-declaratory claims for damages or injunctive relief.  Damages

and injunctive relief are merely examples of non-declaratory claims for which the rule

applies.  The Mackos maintain that SafePort's rescission claim differs from claims for

damages or injunctive relief because rescission "is not a claim the Court <u>must</u> address."

ECF No. 16 at 7 (emphasis in original).   However, the Fourth Circuit reached the

opposite conclusion in <u>Great Am. Ins. Co. v. Gross</u>, 468 F.3d 199, 207 (4th Cir. 2006).

In <u>Gross</u>, the Fourth Circuit considered whether a lower court abused its discretion in

abstaining from a case that involved both (1) a claim for rescission of an insurance policy

based on alleged misrepresentations by the policy holder and (2) a claim for a declaration

that no losses at issue were covered under the policy because of those misrepresentations.

<u>Id.</u> at 207.  Without questioning the propriety of doing so, the Fourth Circuit applied the

<u>Colorado River</u> factors in its abstention analysis for the rescission claim, ultimately

holding that the court abused its discretion in declining to entertain that claim.  In

considering whether the lower court had discretion to abstain from adjudicating the

related declaratory claims, the Fourth Circuit explained that it had not expressed a

definitive view on whether the <u>Colorado River</u> standard should also apply to those

claims.  The court ultimately bypassed that issue because it found abstention from those

claims inappropriate under both the <u>Colorado River</u> and <u>Brillhart</u>/<u>Wilton</u> standards.

<u>Gross</u> suggests that the Fourth Circuit never questioned that the <u>Colorado River</u> standard

applies to claims for rescission; it only questioned what standard applies to any related

declaratory claims.  <u>vonRosenberg</u> settled that question.  The Mackos have not cited—

and this court has not located—any authority that alters the conclusion in <u>Gross</u> that

rescission is a non-declaratory claim that a court <u>must</u> entertain unless the extraordinary

and narrow circumstances underlying the Colorado River doctrine exist. Indeed, vonRosenberg cites Gross with approval for the proposition that "when a court is 'required to entertain' a nondeclaratory claim, it is 'not at liberty to abstain from entertaining the declaratory claims.'" vonRosenberg, 781 F.3d at 734 (citing Gross, 468 F.3d at 210). The court is satisfied that, under Fourth Circuit jurisprudence, rescission is non-declaratory relief for which the Colorado River standard applies. See QBE Ins. Corp., 2017 WL 6323400, at *3 ("Where as here, the Complaint involves matters alleging both declaratory and nondeclaratory relief, this Court will thus look to the abstention doctrine discussed in Colorado River for guidance.").[1]  Therefore, because SafePort's complaint includes a claim for rescission, it is a "mixed complaint" alleging both declaratory and non-declaratory relief, all of which must be analyzed under the Colorado River standard following vonRosenberg.

The Mackos alternatively argue that even if this is a true mixed case, it falls under the exception to the vonRosenberg rule. The Mackos aver that SafePort's claim for rescission is perfunctorily added because there is no practical difference between that claim and SafePort's claims for declaratory relief. According to the Mackos, a declaratory judgment alone would resolve the matter, and SafePort should not be able to "convert a district court's discretionary jurisdiction under Brillhart/Wilton into nearly mandatory jurisdiction under Colorado River . . . simply by tossing in" the rescission

---

[1] The Mackos further argue that the court need not adjudicate the rescission claim because a decision on the declaratory claim would moot the rescission claim. The Mackos are simply incorrect. It is clear from Gross that the relatedness of a declaratory claim and a rescission claim does not absolve the court's obligation to resolve both claims. Moreover, even if the court somehow decided the declaratory claim first, it would not find the rescission claim "moot"; it would simply enter a judgment on the rescission claim in a manner consistent with the declaratory judgment.

9

claim. ECF No. 16 at 4 (citing <u>Riley v. Dozier Internet L., PC</u>, 371 F. App'x 399, 404

n.2 (4th Cir. 2010)). The court does not find SafePort's request for rescission frivolous

merely because SafePort could achieve a similar result on its declaratory judgment claim

alone. The Fourth Circuit addressed the flaw in a similar argument raised in

<u>vonRosenberg</u>. In deciding that the <u>Colorado River</u> standard applies to cases involving

both declaratory claims and ancillary non-declaratory claims, the Fourth Circuit

explained that,

> A contrary approach would deprive a plaintiff of access to a federal forum
> simply because he sought declaratory relief in addition to an injunction or
> money damages. Such a penalty for requesting a declaration seems
> especially unwarranted given that nearly all claims, including those for
> damages or injunctive relief, effectively ask a court to declare the rights of
> the parties to the suit. To ensure that they have asked for all available relief,
> plaintiffs commonly add a request for declaratory relief in addition to
> requests for equitable or monetary relief. We decline to adopt a rule that
> would transform that thoroughness into a handicap.

<u>vonRosenberg</u>, 781 F.3d at 735. Likewise, here, the court will not penalize SafePort for

its thoroughness in including its declaratory claims in addition to its rescission claim.

The court does not find SafePort's inclusion of its rescission claim frivolous and

accordingly, the exception to the <u>vonRosenberg</u> rule does not apply.[2] Therefore, the

court must apply the <u>Colorado River</u> abstention doctrine in determining whether to

exercise jurisdiction over this case.

---

[2] To the extent the Mackos argue that the rescission claim is also frivolous because "SafePort has already rescinded the Policy and refunded the premium," ECF No. 16 at 5, the court disagrees. The Mackos clearly dispute the rescission of the Policies, considering that they challenge the basis for that rescission in this action. Whether a rescission for fraudulent misrepresentation is valid and satisfies the requirements of South Carolina law is a matter for the court to decide, and such a determination is not frivolous. <u>See</u> <u>Primerica Life Ins. Co. v. Ingram</u>, 616 S.E.2d 737, 739 (S.C. Ct. App. 2005).

### B.  Application of the <u>Colorado River</u> Standard

Two conditions must be present for a court to decline jurisdiction pursuant to

<u>Colorado River</u>.  First, "there must be parallel proceedings in state and federal court."

<u>Gannett Co. v. Clark Const. Grp., Inc.</u>, 286 F.3d 737, 741 (4th Cir. 2002).  "Suits are

parallel if substantially the same parties litigate substantially the same issues in different

forums."  <u>New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.</u>, 946

F.2d 1072, 1073 (4th Cir. 1991).  Second, "'exceptional circumstances' warranting

abstention must exist."  <u>Gannett</u>, 286 F.3d at 741.  Courts in the Fourth Circuit employ

the following factors to guide their analysis:

> (1) whether the subject matter of the litigation involves property where the
> first court may assume in rem jurisdiction to the exclusion of others; (2)
> whether the federal forum is an inconvenient one; (3) the desirability of
> avoiding piecemeal litigation; (4) the relevant order in which the courts
> obtained jurisdiction and the progress achieved in each action; (5) whether
> state law or federal law provides the rule of decision on the merits; and (6)
> the adequacy of the state proceeding to protect the parties' rights.

<u>Chase Brexton</u>, 411 F.3d at 463–64.  The Supreme Court has also instructed courts to

consider the extent to which either action was initiated as a "defensive tactical

maneuver."  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 17 n.20

(1983); <u>see also</u> <u>McLaughlin v. United Va. Bank</u>, 955 F.2d 930, 935 (4th Cir. 1992)

(instructing courts to consider "whether either the state or the federal suit was a

contrived, defensive reaction to the other").  These considerations are "to be applied in a

pragmatic, flexible manner with a view to the realities of the case at hand," rather than as

a "mechanical checklist."  <u>Id.</u> at 21; <u>see also</u> <u>Sto Corp. v. Lancaster Homes, Inc</u>, 11 F.

App'x 182, 187 (4th Cir. 2001) ("[A] decision to abstain does not require the presence of

all of the factors."); <u>Moorer v. Demopolis Waterworks & Sewer Bd.</u>, 374 F.3d 994, 997

(11th Cir. 2004) ("One factor alone can be the sole motivating reason for the abstention.").  The court discusses each factor in turn and, finding no extraordinary circumstances warranting abstention, denies the motion to dismiss.

### 1. Parallel Proceedings

A predicate to applying the Colorado River factors is the existence of a parallel state court proceeding.  As discussed above, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums."  New Beckley, 946 F.2d at 1073.  The Fourth Circuit has "strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical."  Chase Brexton, 411 F.3d at 464.  For example, in McLaughlin, the Fourth Circuit found that state and federal actions were not parallel where the state suit involved claims by several corporations, while the federal suit involved personal claims by the president of those corporations.  955 F.2d at 934–35.  In the instant action, only three parties are present: the two Mackos and SafePort.  The State Court Action includes these same parties, along with Servicemaster, IAT Insurance Group, Mortgage Network, Inc., SageSure Insurance Managers, LLC, American Auto, and Becky Thompkins Rushing.  Because of the additional parties in the State Court Action, the parties are not facially the same. Nevertheless, the "substantially same parties" requirement appears to be intended to address situations where there are more parties in federal court than in state court.  Compare Chase Brexton, 411 F.3d at 464 (finding the state and federal actions were not parallel where the federal court proceeding involved seven plaintiffs, only two of whom were involved in the state court proceeding) with Gross, 468 F.3d at 208 ("[W]hile it is true that the parties in Colorado River were not identical to the parties in

the 'parallel' state action, at least the federal plaintiff was a party to the state action."). The reason for this is plain: a federal court that abstains when the parallel state court proceeding has fewer parties leaves some of its parties in limbo. That is not the case here. All parties in the present case are in the State Court Action. Thus, for purposes of determining whether the actions are parallel, the inclusion of the additional parties in the State Court Action is insufficient to render the parties not "substantially" the same.

The second prong of the threshold question is whether the parties are litigating substantially the same issues. SafePort argues that the lawsuits do not litigate substantially the same issues because the primary complaint in the State Court Action involves Servicemaster's attempts to recover for the work it completed at the Home. SafePort argues that the factual issues in the suits are only similar because the Mackos asserted crossclaims in an attempt to "drastically expand the scope" of the State Court Action. ECF No. 11 at 10. The court is unconvinced in this respect. The Mackos were entitled to file their crossclaims against co-party SafePort under South Carolina Rule of Civil Procedure 13. SafePort cites no authority for its proposition that the court should disregard the Mackos' crossclaims in determining whether the actions are parallel, and this court likewise finds none. Similar to its discussion at the first prong, the court is not concerned that the State Court Action contemplates more issues than this case. See Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir. 1989) ("We should be particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation."). Indeed, the existence of additional issues to litigate in the State Court Action naturally flows from the presence of more parties in that action.

A more significant consideration is whether the issues to be litigated in this action are substantially the same as <u>any</u> issues to be litigated in the State Court Action. Both actions involve the factual issues of whether Mrs. Macko made misrepresentations in her insurance application and whether SafePort relied on those misrepresentations in issuing the Policies. Both actions likewise involve the legal issues of whether the Policies are void <u>ab initio</u> and whether SafePort is liable for any portion of the Fire Loss. Still, the court's analysis is complicated by the fact that SafePort seeks the additional remedy of rescission in this action and does not assert that cause of action in the State Court Action. "[S]tate and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." <u>vonRosenberg v. Lawrence</u> ("<u>vonRosenberg II</u>"), 849 F.3d 163, 168 (4th Cir. 2017) (citing <u>New Beckley</u>, 946 F.2d at 1074 ("[S]ome factual overlap does not dictate that proceedings are parallel.")). Rather, a federal court may abstain under <u>Colorado River</u> only if it "concludes that the parallel state-court litigation will be an adequate vehicle for the <u>complete</u> and prompt resolution of the issues between the parties." <u>Id.</u> (citing <u>Moses H. Cone</u>, 460 U.S. at 28) (emphasis in original). "If there is any serious doubt that the state action would resolve <u>all</u> of the claims, it would be a serious abuse of discretion to abstain." <u>Id.</u> (emphasis in original). Because SafePort's rescission cause of action is not asserted in the State Court Action, the State Court Action would not resolve all of the claims before this court, which supports a finding that the actions are not parallel. <u>See id.</u> ("[It is] clear that the two actions are not parallel—the state action will not resolve every claim at issue in the federal action."). Regardless, the court need not resolve the threshold question because

even if the suits were sufficiently parallel, the <u>Colorado River</u> factors decidedly favor SafePort, as discussed below.

### 2. Exceptional Circumstances

Even where a district court's action is "parallel" to a competing state court action, the court may only abstain in the presence of "exceptional circumstances." <u>Gannett</u>, 286 F.3d at 741. Consideration of the relevant factors satisfies the court that the circumstances of this lawsuit are not sufficiently exceptional to warrant abstention.

### a. In Rem Jurisdiction

The first factor is "whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others." <u>Chase Brexton</u>, 411 F.3d at 463. Although this lawsuit arises from alleged property damage, neither this action nor the State Court Action would require a court to assert in rem jurisdiction over property. The absence of this factor weighs only slightly against abstention, as courts rarely accord such absence significant weight. <u>See, e.g.</u>, <u>Sto Corp.</u>, 11 F. App'x at 187 ("This case does not involve property[;] [h]owever, a decision to abstain does not require the presence of all of the factors.").

### b. Convenience of the Federal Forum

Next, courts routinely consider "whether the federal forum is an inconvenient one." <u>Chase Brexton</u>, 411 F.3d at 463. Here, it is not. The State Court Action is pending in Beaufort, South Carolina, which lies in this federal district. Even if the parties reside closer to Beaufort, which the parties do not argue, litigation in this district would be only marginally more inconvenient. <u>See</u> <u>Oldfield Club v. TI Oldfield Dev., LLC</u>, 2017 WL 5523045, at *4 (D.S.C. Nov. 17, 2017) ("Undoubtedly the Selby Defendants would prefer

15

not to drive ninety miles to attend court, but this does not seem to be the sort of inconvenience which rises to the level of 'exceptional circumstances' under <u>Colorado River</u>."); <u>Colorado River</u>, 424 U.S. at 805 (finding "significant" that the federal courthouse was 300 miles away from the location in question in affirming the district court's dismissal of the action).

### c. Avoiding Piecemeal Litigation

In determining whether to abstain, courts must also consider "the desirability of avoiding piecemeal litigation." <u>Chase Brexton</u>, 411 F.3d at 463–64. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." <u>Gannett</u>, 286 F.3d at 744 (quoting <u>Am. Int'l Underwriters (Phil.), Inc. v. Cont'l Ins. Co.</u>, 843 F.2d 1253, 1258 (9th Cir. 1988)). "But the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." <u>Colorado River</u>, 424 U.S. at 816. The Mackos argue that the court should dismiss this case because, if it does not, the Mackos may suffer inconsistent relief and be forced to litigate simultaneous cases with identical issues. As an initial matter, both this court and the state court will apply the same law to this ordinary contract dispute, so the court finds the risk of inconsistent results minimal.[3] Moreover, even if the court's retention of the case did risk inconsistent results and judicial inefficiency, the Supreme Court and the Fourth Circuit have explicitly rejected the idea that a district court can abstain under the <u>Colorado River</u> standard based

---

[3] The court also takes judicial notice of the parties' stipulation in the State Court Action that if this court denies the motion to dismiss the federal action, the Mackos will dismiss their State Court Action cross-claims against SafePort. This stipulation further satisfies the court that no risk of inconsistent results exists if it retains jurisdiction.

16

on these reasons alone. See Colorado River, 424 U.S. at 815 ("The mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."); Gannett, 286 F.3d at 744 ("[The threat of inconsistent results and the judicial inefficiency inherent in parallel breach of contract litigation, however, are not enough to warrant abstention."); Chase Brexton, 411 F.3d at 465–66 ("With respect to the third factor—the desirability of avoiding piecemeal litigation—the district court found that the two adjudications might end with 'disjointed or unreconcilable results.' But this is not the threat of piecemeal litigation with which Colorado River was concerned; it is a prospect inherent in all concurrent litigation."). For this factor to weigh in the Mackos' favor, the "retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums." Gannett, 286 F.3d at 744. This principle derives from the general rule "that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." Colorado River, 424 U.S. at 817 (internal citation omitted). In Colorado River, for example, that plus factor was a "clear federal policy" for "avoidance of piecemeal adjudication of water rights in a river system," which was the nature of the dispute. Id. at 819. Here, there is no federal law or policy that points a finger in either direction, and the Mackos have not articulated any other plus factor to suggest that the danger of piecemeal litigation here is beyond that which is attendant to any parallel proceedings in multiple courts.[4] See Spark Energy Gas, LP v. Toxikon Corp., 864 F. Supp. 2d 210, 219 (D.

---

[4] Although Fourth Circuit precedent suggests that "the presence of at least one other party in the state suit [creates] a possibility of piecemeal litigation," Sto Corp., 11 F. App'x at 187, the court finds that any such possibility created by additional parties in

Mass. 2012) ("Parallel litigation regarding an ordinary contract dispute having primary importance only to the immediate parties does not establish [] an exceptional basis [for abstention]."). Therefore, the threat of piecemeal litigation is not sufficiently extraordinary to support abstention. See Gordon v. Luksch, 887 F.2d 496, 497–98 (4th Cir. 1989) (internal citations omitted) ("Only in the most extraordinary circumstances . . . may federal courts abstain from exercising jurisdiction in order to avoid piecemeal litigation."); PCS Nitrogen, Inc. v. Ross Dev. Corp., 2010 WL 3893619, at *4 (D.S.C. Sept. 30, 2010) ("While some duplication of effort is likely to occur if both the state and federal court actions proceed, Defendants fail to provide any reason why permitting both the state and federal proceedings to go forward would result in 'inefficiencies and inconsistent results beyond those inherent in parallel litigation.' Allowing both of these cases to proceed would likely result only in the normal issue and claim preclusion that occurs when one court decides an issue or claim before another court. Such normal preclusion does not favor abstention."); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st Cir. 1990) ("[Colorado River abstention] is not warranted simply because related issues otherwise would be decided by different courts, or even

---

the State Court Action is too remote to weigh on this factor. In Sto Corp., the ultimate question in both the federal and state court actions was liability for home damage resulting from faulty construction. The homeowners, manufacturer, and general contractor were all parties to both suits. However, the state court suit also included the roofer as an additional defendant. The Fourth Circuit therefore found that the issue of liability for the home damage could not be fully resolved in federal court because the state court would still have to determine the roofer's liability for the same damage. This threat of piecemeal litigation favored abstention. Here, on the other hand, the issue before the court—the validity of the Policy—is a dispute solely between the Mackos and SafePort. While this court's determination of policy coverage may impact the recovery of other parties, like Servicemaster, in the State Court Action, the additional parties are sufficiently removed from the issue of policy coverage that their absence in this case does not create a significant threat of piecemeal litigation.

because two courts otherwise would be deciding the same issues.  As noted above,

something more than a concern for judicial efficiency must animate a federal court's

decision to give up jurisdiction.").

### d.  Order of Proceedings

Next, courts consider "the relevant order in which the courts obtained jurisdiction

and the progress achieved in each action."  Chase Brexton, 411 F.3d at 464.  SafePort

filed this action on January 13, 2021, and Servicemaster filed the State Court Action on

January 20, 2021.  The Mackos subsequently asserted their cross-claims, including their

overlapping declaratory judgment claims, against SafePort on February 22, 2021.

Accordingly, the order of filing slightly favors SafePort.  Of course, "priority should not

be measured exclusively by which complaint was filed first, but rather in terms of how

much progress has been made in the two actions."  Moses H. Cone, 460 U.S. at 21.

Progress-wise, this consideration is a wash.  During the hearing, SafePort represented to

the court that neither action has passed the initial pleading phase.  Therefore, the court

finds that this factor does not favor abstention.  See Gannett, 286 F.3d at 748 ("Because

the State Contract Action was filed within a day of the Federal Contract Action and both

had progressed at similar paces, the district court correctly found that this factor does not

weigh heavily in favor of abstention.").

### e.  Applicable Law

Courts also consider "whether state law or federal law provides the rule of

decision on the merits."  Chase Brexton, 411 F.3d at 464.  State law provides the rules of

decision in this insurance coverage dispute.  Nevertheless, the Supreme Court has made

clear that the presence of state law and the adequacy of state proceedings can be used

19

only in "rare circumstances" to justify <u>Colorado River</u> abstention.  <u>See</u> <u>Moses H. Cone</u>,

460 U.S. at 26.  Indeed, "federal courts regularly grapple with questions of state law, and

abstention on the basis of the presence of state law, without more, would undermine

diversity jurisdiction."  <u>Gannett</u>, 286 F.3d at 746 (internal quotation marks omitted).  This

is particularly true in the context of insurance coverage disputes, which are regularly

litigated in federal court and are "uncomplicated."  <u>See</u> <u>Gordon v. Luksch</u>, 887 F.2d 496,

498 (4th Cir. 1989) (refusing to abstain because the case required interpretation of state

law issues that are "uncomplicated and permit little legal disagreement").  As such, the

court is not swayed by this factor.  <u>See</u> <u>id.</u> at 747 ("That state law is implicated . . .

'do[es] not weigh in favor of abstention, particularly since both parties may find an

adequate remedy in either state or federal court.'").

### f.  Protection of Parties' Rights

Next, the court considers "the adequacy of the state proceeding to protect the

parties' rights."  <u>Id.</u>  This factor supports retention of federal jurisdiction when "an

important federal right is implicated and state proceedings may be inadequate to protect

the federal right."  <u>Id.</u> at 746.  The court has no reason to believe that the state court

would be an inadequate forum for resolving this matter.  Adequacy of the state court,

however, is insufficient to tip the scale in favor of abstention.  <u>See</u> <u>Ryan v. Johnson</u>, 115

F.3d 193, 200 (3d Cir. 1997) ("[T]his factor is normally relevant only when the state

forum is inadequate . . . . When the state court is adequate, however, the factor carries

little weight."); <u>Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.</u>, 800 F.2d 325, 328

(2d Cir. 1986) ("This factor, like choice of law, is more important when it weighs in

favor of federal jurisdiction.  It is thus of little weight here.").  Thus, this factor provides little, if any, support for abstention.

### g.  Vexatious or Reactive Nature of Either Proceeding

Finally, the court considers the extent to which either proceeding was initiated as a "defensive tactical maneuver."  Moses H. Cone, 460 U.S. at 17 n.20.  "[T]he vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River."  Id.  In the ordinary circumstance, courts give this factor credence where a defendant files a federal suit in an obvious attempt to frustrate an ongoing state court action.  See, e.g., Telesco Fuel & Masons Materials, Inc., 765 F.2d 356, 363 (2d Cir. 1985).  That is not the case here.  The court has no reason to believe that SafePort, in filing the instant action, is making vexatious use of the federal courts.  On the other hand, the Mackos' inclusion of non-compulsory cross-claims in the State Court Action—claims that implicate the same issues already raised in this action more than one month prior—appears to be reactionary to SafePort's filing of this action and an attempt to avoid litigation of the matter in federal court.  As such, this factor favors retention of the case.

In considering the sum of the factors above, the court is mindful that it must apply Colorado River abstention "parsimoniously."  Chase Brexton, 411 F.3d at 463.  Its task is not "to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction."  Moses H. Cone, 460 U.S. at 25–26.  Based on the above analysis, the court does not find that such circumstances or justification for

abstention exist here.  Therefore, the court must respect its "virtually unflagging obligation" to exercise its jurisdiction over the instant matter properly before it.  <u>Colorado River</u>, 424 U.S. 800 at 817.

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 8, 2021**
**Charleston, South Carolina**